UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
--------------------------------x
                                :
LAWRENCE NADEAU,                :
                                :
        Plaintiff,              :
                                :
v.                              :    Civ No. 3:03CV00834(AWT)
                                :
DONALD ANTHONY,                 :
                                :
        Defendant.              :
                                :
--------------------------------x
```

**RULING ON MOTION FOR SUMMARY JUDGMENT**

Lawrence Nadeau ("Nadeau") brings this action against Donald Anthony ("Anthony"). The complaint sets forth claims pursuant to 42 U.S.C. § 1983 for malicious prosecution and false arrest; it also sets forth state law claims for intentional and negligent infliction of emotional distress. The defendant has moved for summary judgment on the § 1983 malicious prosecution and false arrest claims[1] and argues that the court should decline to exercise supplemental jurisdiction over the state law claims. For the reasons set forth below, the defendant's motion is being granted.

---

[1] The court notes that the Complaint contains a reference to "due process of law." (Complaint, ¶ 17). It is unclear from the Complaint, however, whether the plaintiff is attempting to assert a due process claim, and what grounds such a claim might be based upon. The court notes further that the plaintiff did not contest that the defendant was moving for summary judgment on all of the plaintiff's federal claims asserted in the Complaint.

**I.   FACTUAL BACKGROUND**

In 1987, Nadeau purchased rental property at 43 North Third Street in Meriden, Connecticut. The property contained five apartment units. Nadeau rented those units to tenants. On or about August 18, 2000, the Meriden Housing Department received a referral from John Yacovino, Fire Inspector, regarding a tenant's complaint about electrical problems on the second floor of the property. On August 25, 2000, Meriden Housing Inspector Tom Kilroy visited the property, where he spoke to Nadeau. After Nadeau questioned Kilroy's qualifications to perform an inspection, Kilroy requested the assistance of Anthony, who was an electrical inspector with the City of Meriden. Anthony inspected the property on or about August 28, 2000. As a result of this inspection, Anthony informed Nadeau that the fire alarm system had been installed without a building permit. Nadeau contacted Shawn Burch of Armed and Ready Alarm Systems, which had installed the alarm system, and informed him that a building permit was needed. Burch submitted a permit application dated September 12, 2000. According to Nadeau, Anthony signed the permit on September 13, 2000.

Anthony also sent a letter to Nadeau dated October 3, 2000 informing him that an inspection of the alarm system on October 3, 2000 had revealed that the fire alarm system was unsafe, and that Nadeau was required to install a separate electric meter and

panel for the alarm system.  In an order dated October 16, 2000, Anthony informed Nadeau that "[t]he service for the entire building was found unsafe."  (Def. Ex. H).  This constituted a violation of 1996 State Building Code § 2708.2.  The order referred to an inspection which took place on October 3, 2000, and the order stated that Nadeau had thirty days to comply with the order or be subject to criminal prosecution.

On January 4, 2001, Anthony reinspected the property and the violation cited in the October 16, 2000 order still existed. On January 8, 2001, Anthony completed an application for an arrest warrant, which included an affidavit concerning his findings.  Supervisory Assistant State's Attorney for Statewide House Matters Judith Rothschild initiated the prosecution against Nadeau pursuant to Conn. Gen. Stat. § 51-286b[2].  Nadeau claims that Anthony's affidavit contained false and misleading statements and omissions that were material to a determination of probable cause.

Subsequently, Nadeau received a summons through the mail requiring him to appear in court on February 15, 2001.  On that

---

[2] "The assistant state's attorney or deputy assistant state's attorney assigned to handle housing matters may initiate prosecutions for violations of any state or municipal housing or health law, code or ordinance either upon the affidavit of an individual complainant or upon complaint from a state or municipal agency responsible for the enforcement of any law, code or ordinance concerning housing matters."  Conn. Gen. Stat. § 51-286b.

3

date, Nadeau was released on a written promise to appear.  Nadeau testified that he did not have to post bail and could not remember whether his ability to travel was hindered in any way.  There were twelve scheduled court dates, but Nadeau testified that he "believe[s] one and maybe two were cancelled."  (Nadeau Dep., Mar. 8, 2005, at 102).  Nadeau alleges that, on June 17, 2002, the charges against him were dismissed.

## II.  LEGAL STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law.  Fed. R. Civ. P. 56(c).  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994).  Rule 56(c) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  See Celotex Corp., 477 U.S. at 322.

When ruling on a motion for summary judgment, the court must respect the province of the jury.  The court, therefore, may not try issues of fact.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Board of

Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975). It is well-established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." Anderson, 477 U.S. at 255. Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined . . . to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact. Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. As the Court observed in Anderson: "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Id. at 248. Thus, only those facts that must be decided in order to

resolve a claim or defense will prevent summary judgment from being granted. When confronted with an asserted factual dispute, the court must examine the elements of the claims and defenses at issue on the motion to determine whether a resolution of that dispute could affect the disposition of any of those claims or defenses. Immaterial or minor facts will not prevent summary judgment. See Howard v. Gleason Corp., 901 F.2d 1154, 1159 (2d Cir. 1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in its favor." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000)(quoting Del. & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990)). Because credibility is not an issue on summary judgment, the nonmovant's evidence must be accepted as true for purposes of the motion. Nonetheless, the inferences drawn in favor of the nonmovant must be supported by the evidence. "[M]ere speculation and conjecture" is insufficient to defeat a motion for summary judgment. Stern v. Trs. of Columbia Univ., 131 F.3d 305, 315 (2d Cir. 1997) (quoting W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d. Cir. 1990)). Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position" will be insufficient; there must be evidence on which a jury

could "reasonably find" for the nonmovant.  <u>Anderson</u>, 477 U.S. at 252.

Finally, the nonmoving party cannot simply rest on the allegations in its pleadings since the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists.  <u>See</u> <u>Celotex Corp.</u>, 477 U.S. at 324.  "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact," <u>Weinstock</u>, 224 F.3d at 41, if the movant demonstrates an absence of such issues, a limited burden of production shifts to the nonmovant, which must "demonstrate more than some metaphysical doubt as to the material facts, . . . [and] must come forward with specific facts showing that there is a genuine issue for trial."  <u>Aslanidis v. United States Lines, Inc.</u>, 7 F.3d 1067, 1072 (2d Cir. 1993)(quotation marks, citations and emphasis omitted). Furthermore, "unsupported allegations do not create a material issue of fact."  <u>Weinstock</u>, 224 F.3d at 41. If the nonmovant fails to meet this burden, summary judgment should be granted. The question then becomes whether there is sufficient evidence to reasonably expect that a jury could return a verdict in favor of the nonmoving party.  <u>See</u> <u>Anderson</u>, 477 U.S. at 248, 251.

**III. DISCUSSION**

    **A. Section 1983 Claims**

**1.  Malicious Prosecution**

To prevail on a malicious prosecution claim against a state actor pursuant to § 1983, a plaintiff must show a violation of his rights under the Fourth Amendment, and meet the criteria for a malicious prosecution claim under state law. Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir. 2002); see also Murphy v. Lynn, 118 F.3d 938, 944 (2d Cir. 1997) (citing to Albright v. Oliver, 510 U.S. 266 (1994) for the proposition that "a plaintiff who has alleged that a criminal prosecution was initiated against him without probable cause has not stated a § 1983 claim for violation of his right to substantive due process" but must demonstrate a violation of his Fourth Amendment rights). Also, "since the gist of a claim for malicious prosecution is abuse of the judicial process, a plaintiff pursuing such a claim under § 1983 must show that the seizure resulted from the initiation or pendency of judicial proceedings." Murphy, 118 F.3d at 944. Under Connecticut law, to be successful on a malicious prosecution claim, the plaintiff must show that "(1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice." McHale v. W.B.S. Corp., 187 Conn. 444, 447

(1982).

The defendant argues that the plaintiff was not seized under the meaning of the Fourth Amendment. The court agrees.

"A 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, 'by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen.'" Graham v. Connor, 490 U.S. 386, 395 n. 10 (1989) (citation omitted). In California v. Hodari D., the Court noted that "[a] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" 499 U.S. 621, 627-28 (1991) (citation omitted).

"When the accused is physically detained following arraignment, there can be no question that he has been seized within the meaning of the Fourth Amendment." Murphy, 118 F.3d at 944. In Murphy, the Second Circuit found that an order that the defendant not leave the state as a condition of pretrial release and obligations to appear in court (on eight occasions) were restrictions which "constituted a seizure within the meaning of the Fourth Amendment." 118 F.3d at 946. The Second Circuit explained:

> In sum, while a state has the undoubted authority, in connection with a criminal proceeding, to restrict a properly accused citizen's constitutional right to travel

outside of the state as a condition of his pretrial release, and may order him to make periodic court appearances, such conditions are appropriately viewed as seizures within the meaning of the Fourth Amendment.

Id. at 946.

"Although the Second Circuit has not directly addressed whether or not the issuance of a summons and complaint, coupled with the requirement that an individual appear in court, constitutes a seizure, the weight of authority holds that it is not." Zak v. Robertson, 249 F.Supp.2d 203, 207 (D. Conn. 2003); cf. Dorman v. Castro 347 F.3d 409, 411 (2d Cir. 2003)("[w]hether a mere pre-arraignment summons constitutes a Fourth Amendment 'seizure' is . . . a difficult issue and one that has not yet been resolved in this Circuit"). In Dorman, the Second Circuit noted that where the plaintiffs were issued tickets charging them with disorderly conduct and requiring them to appear in court at a later date, this was distinguishable from Murphy because it involved pre-arraignment summons. See id. In addition, the court cited favorably to Britton v. Maloney, 196 F.3d 24, 30 (1st Cir. 1999) for the proposition that:

> Absent any evidence that [plaintiff] was arrested, detained, restricted in his travel, or otherwise subject to a deprivation of his liberty before the charges against him were dismissed, the fact that he was given a date to appear in court is insufficient to establish a seizure within the meaning of the Fourth Amendment.

Dorman, 347 F.3d at 411. In Britton, the First Circuit determined that there had not been a seizure where a summons was

issued by mail, the defendant was ordered to appear in court, and the case was subsequently dismissed for failure to prosecute. The court distinguished Murphy, observing that the defendant's "criminal prosecution in this case did not impose any restrictions on his liberty other than the legal obligation to appear in court at a future date." Britton, 196 F.3d at 29. The court found it insufficient that the defendant was "threatened . . . with arrest if he failed to appear." Id. See also Nieves v. McSweeney et al., 241 F.3d 46 (1st Cir. 2001) (criminal defendants released on their own recognizance at arraignment who had to attend court appearances through trial did not have malicious prosecution claims because they were forced to appear in court); Zak, 249 F.Supp.2d at 208 (where individuals picked up summons and complaint at police station and had to attend court on one or more dates before the charges were dropped but the court imposed no other conditions of release, "[t]he restraints on the plaintiffs' liberty . . . were insufficient as a matter of law to constitute a seizure for the purposes of the Fourth Amendment"); Fonseca v. Alterio, Civil No. 3:03CV1055(AVC), 2006 WL 2165695, at *4 (D. Conn. July 28, 2006) (where plaintiff was issued a summons requiring his appearance in court and was not arrested, plaintiff only had to appear in court once, there were no travel restrictions, and judgment was eventually entered in favor of the plaintiff, there was no seizure under the Fourth

11

Amendment).

In this case, Nadeau received a summons in the mail. The summons required that he appear in court for his arraignment. At the arraignment, Nadeau was released on a written promise to appear. Nadeau testified that he did not have to post bond. There is no evidence that the court imposed any travel restrictions. Nadeau was required to appear in court on a number of occasions; there were twelve scheduled appearances, but Nadeau testified that he believed that one or two had been canceled. Thus, to support his claim, Nadeau can only point to the fact he received a summons in the mail and the fact he was required to appear in court. Here, as in Zak, the imposition of such obligations is insufficient as a matter of law to constitute a seizure under the Fourth Amendment.

### 2. False Arrest

The plaintiff argues that there was not probable cause to arrest him. Assuming arguendo that there was not probable cause, the plaintiff's false arrest claim still fails because "[a] plaintiff may only bring a claim of false arrest . . . if he suffered a deprivation of liberty prior to the issuance of legal process." Zak v. Robertson, 249 F.Supp. 203, 206 (D. Conn. 2003). In Zak, the court explained, "[b]ecause plaintiffs have not come forward with any evidence that they suffered any deprivation of liberty prior to the issuance of legal process

against them, their claim is for malicious prosecution, not false arrest." Id. at 206; see also Fonseca v. Alterio, Civ. No. 3:03CV1055(AVC), 2006 WL 2165695 *3 (D. Conn. July 28, 2006) (to bring a section 1983 claim for false arrest, a plaintiff must show, in addition to state law elements, "that a deprivation of liberty, consistent with a seizure under the Fourth Amendment, occurred and that the deprivation occurred before the start of the legal process, generally 'from the moment of arrest to the time of arraignment'") (citation omitted); Porat v. Lincoln Towers Community Ass'n, No. 04 Civ. 3199(LAP), 2005 WL 646093, at *4 (S.D.N.Y. Mar. 21, 2005) (where plaintiff was issued a summons stating a date on which the person was to appear in court, "[p]laintiff's false arrest and imprisonment claim fails because his pleading states that he was simply never arrested"). Here, there was no deprivation of liberty, as Nadeau was never taken into custody or detained prior to the arraignment. Therefore, his claim for false arrest fails.

**B. State Law Claims**

The plaintiff also brings state law claims for intentional and negligent infliction of emotional distress. "The district courts may decline to exercise supplemental jurisdiction over a [state law] claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C.A. § 1367(c)(3). "[P]endent jurisdiction is a doctrine of

13

discretion, not of plaintiff's right." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966).

While dismissal of the state law claims is not mandatory, Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988), when "all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine--judicial economy, convenience, fairness, and comity--will point toward declining to exercise jurisdiction over the remaining state-law claims." Id. Accordingly, the court declines to exercise supplemental jurisdiction over the plaintiff's state law claims.

**IV.   CONCLUSION**

For the reasons set forth above, the defendant's Motion for Summary Judgment (Doc. No. 56) is hereby GRANTED.

The Clerk shall close this case.

It is so ordered.

Dated this 24th day of January 2007 at Hartford, Connecticut.

/s/AWT
Alvin W. Thompson
United States District Judge
